## JIM CHARLES v. THE STATE.

### No. 5746. Decided April 21, 1920.

**1.—Murder—Evidence—Bill of Exceptions—Competency of Witness.**

Upon trial of murder inflicting the death penalty, there was no error in the court's ruling, after the son of the deceased had stated his age to be sixteen years and that he received this information from his mother, to rule out a census report showing that the father of the witness had entered him as fourteen years of age, as this was not the act of the witness.

**2.—Same—Evidence—Leading Question.**

Where the question propounded by the district attorney as to whether the land was plowed to the end of the row could not be termed a leading question, and the bill failed to show any attendant facts or circumstances that led up to this inquiry, there was no reversible error.

**3.—Same—Measurements of Tracks—Evidence—Predicate.**

Where the main objection was that there was no proper predicate laid and proper measurements made of the tracks to introduce testimony of tracks corresponding to those of defendant and his companion, but the record showed to the contrary, and that the tracks were easily identified upon the ground, there was no reversible error|

**4.—Same—Hearsay Evidence—Bill of Exceptions—Practice on Appeal.**

If the question of the deceased being a hoodoo negro got into the case in such a way as to make it a question for examination, it might have been proper to have asked and elicited the answer, but coming in the way of hearsay and the answer not being stated, there was no reversible error.

**5.—Same—Evidence—Bill of Exceptions.**

Where the bill of exceptions was too indefinite for consideration with reference to the cross-examination of the State's witness, to the effect that he had killed a tall negro with boots on, etc., the same cannot be considered.

**6.—Same—Evidence—Practice on Appeal—Bill of Exceptions.**

Where the bill of exceptions failed to disclose the answer, the question propounded by the district attorney to the witness, if he could hear a gun from where deceased was killed, the same could not be considered.

**7.—Same—Witness Under Rule—Evidence—Predicate—Bills of Exceptions.**

Where the bill of exceptions did not show that the predicate was laid to contradict a State's witness, who was an eye-witness to the shooting, by showing that he had stated that he had only seen one of the two persons, there was no error in sustaining the objection to this testimony; besides, the witness had not been placed under the rule which had been invoked.

**8.—Same—Evidence—Bill of Exceptions—Motive.**

Where the bill of exceptions failed to state the answer to the question propounded by the State's counsel, concerning a matter of the loss by deceased of some seed cotton and that he charged defendant with the theft of same, the matter cannot be reviewed.

**9.—Same—Bill of Exceptions—Evidence—Motive.**

Where, the State's witness was permitted to testify to a conversation he had with defendant with reference to deceased having accused him with stealing cotton, but the conversation itself was not stated in the bill, nor the ground of objection, and this matter may have entered into the motive of the killing, there was no reversible error.

**10.—Same—Evidence—Age of Witness—Impeaching Witness.**

That a witness may be impeached by showing that he was under a charge of murder is sustained by the authorities, but it is also the rule that in such impeachment, usually, the details of the accusation will not be permitted, and there was no error to sustain an objection on cross-examination of a State's witness who had answered that he was under a charge of murder, as to what his age was, etc.

**11.—Same—Continuance—Testimony of Other Witnesses—Admission by State.**

Where the alleged absent testimony set out in the application for continuance had been testified to by other witnesses before the jury, there was no error in overruling a motion for new trial because defendant's application for continuance had not been granted. However, the admission by the State, that said absent testimony was true on motion for a new trial, would not have cured the overruling of the continuance if the testimony had been material, etc.

**12.—Same—Sufficiency of the Evidence—Murder—Death Penalty.**

Where, upon trial of murder the testimony of the accomplice was corroborated by the son of the deceased, who saw both said companion and defendant at the place of the shooting, and testified that defendant was armed with a gun that fired the fatal shot, and also by the sheriff, with reference

to·the measurement of tracks, etc., the conviction was sustained, although the testimony of the defendant showed that he was not present, etc., and the matter was a question of fact for the jury.

Appeal from the District Court of San Jacinto. Tried below before the Honorable J. L. Manry.

Appeal ·from a conviction of murder. Penalty, death.

The opinion states the case.

*Wm. McMurrey*, for appellant.—On question of witness under the rule, etc.: Caviness v. State, 42 Texas Crim. Rep., 420; Cooper v. State, 72 id., 250; Clayton v. State, 180 S. W. Rep., 1089; Hernandez v. State, 183 id., 440.

On question that deceased was a hoodoo negro: Anderson v. State, 71 Texas Crim. Rep., 27.

*Alvin M. Owsley*, Assistant Attorney General, for the State.—On question of showing motive: DuBose v. State, 13 Texas Crim. App., 418; Canon v. State, 128 S. W. Rep., 141.

On question of admission by State's counsel: Brown v. State, 174 S. W. Rep., 362.

DAVIDSON, PRESIDING JUDGE.—The trial of appellant resulted in a conviction of murder with the death penalty assessed.

There are two theories involved under the testimony: one that appellant in connection with the accomplice White went into the woods near the field where deceased was plowing, and that appellant shot the deceased from which shooting he died a few days later. The accomplice testified to these facts. A son of deceased was with his father at the time and in front of him. The deceased was plowing and walking from the direction from which the shot came, he receiving a shot in the back. The boy was ahead of his father a few feet, and when he heard the shot looked around, and saw defendant and White in the edge of the woods. Appellant had the gun. He holloed at him, expressing his recognition. It is also shown that deceased at the time recognized defendant as the party who shot him. This was a *res gestae* statement. The sheriff also testified to measurements of tracks of two men in the woods at or near the place where White and appellant were supposed to have been stationed at the time of the shooting. These tracks corresponded with the shoes worn by the two men. There were no exceptions to the charge.

The first bill was reserved to the refusal of the court to permit the cross-examination of the son of deceased as to his age. The bill shows that he testified he was sixteen years of age, and had received such information from his mother. Counsel stated to witness he had a report of the school census, and in connection with this desired to examine the witness. This was objected to by the State because irrele-

vant and immaterial. Appellant contended that it was relevant and would be direct testimony as to the age of the boy testifying. The court permitted the boy to testify as to his age and his information from his mother that such was his age, being sixteen. The bill does not show the stated age of the boy in this census report. In the testimony, if we should revert to that, it is shown by the census that his father stated the age of the boy to be fourteen. This report was made in March, 1918, and the killing occurred in August of the same year. The answer of the witness would seem to preclude further examination as he had no connection with the report and it involved no act of his. That the defendant had the right to show the boy was not sixteen as the boy testified is not to be questioned, but from census report we think the examination of the boy would not be material as it was not his act. Had he made the report, it would have been proper to examine him. The bill is indefinite from any view point of it, and as it is presented there could have been no possible error.

Another bill shows that while the sheriff, Patrick, was testifying, was asked this question by the district attorney: "Well, was that plowed to the end of the row or partly plowed? A. It was plowed to the end of the row, four or five feet from the end of the row." The appellant objected to the district attorney leading the witness, and asked that the question be striken out. The objection was overruled. This would not be termed a leading question. The bill does not show any attendant fact or circumstance that led to this inquiry.

Another bill recites the same witness was asked with reference to the measurements of the tracks found in the woods to which he had testified. The main objection was that there was no proper predicate laid and proper measurements were not made. These objections were not well taken. These tracks were measured as stated by the sheriff rather accurately, and this measurement was applied to the shoes of the two men, appellant and White, and found to correspond. This was legitimate. The next bill was in regard to the same matter, and rather an amplification of the former bill in regard to the attendant circumstances and the condition of the ground where the tracks were made, showing that the tracks were easily identified upon the ground, it being soft and damp and the impressions distinct.

Another bill recites that while the accomplice White was testifying, on cross-examination he was asked if certain people, "named in the question" but not specified in the bill, had not told witness White that Lester Green "was a hoodoo negro." The State's objection was sustained. What was the object and purpose of introducing this testimony is not stated, nor are there any connecting facts to show that this testimony was admissible. The State's objection was that it was hearsay. As presented in this bill such objection was well taken. If the question of the deceased being a "hoodoo negro" got into the case in such way as to make it a question for examination, it might

have been proper to have asked and elicited the answer, but the expected answer is not stated.

Another bill recites that while White was being cross-examined by defendant he was asked if he told defendant a day before deceased was shot that he, witness, had killed a tall negro with boots on. The State's objection was sustained. This bill is too indefinite for consideration.

Another bill recites while Mr. Kennedy was testifying and had stated he lived in about one-half mile of the place where deceased was killed, and that he had not heard a gun "over there" before he left for Cleveland, on cross-examination the district attorney asked witness if he could hear a gun from where deceased was killed to Cleveland. The answer is not stated. How this could have injured the appellant is not shown by the bill.

Another bill recites that appellant offered the testimony of Elmore Charles. The bill further recites that it developed that Elmore Charles had not been subpoenaed as a witness and "had been in the courtroom during the examination of other witnesses and heard a great many of them testify;" that the State had invoked the rule, and objected to the witness testifying on that ground. Appellant insisted that inasmuch as he had not had time to get his testimony together and his counsel had not had time to learn who were witnesses for the defendant and did not know that Elmore Charles had information that would make him a witness, that the court should permit him to testify. The defendant offered to show by this witness that he had heard Esther Green tell about the occurrence soon after it occurred and that he had not claimed that he had seen two persons at the time of the shooting. The appellant also claimed that Esther Green had only seen one person, and that that person was White and not defendant. The state objected to this witness being permitted to testify. This is the entire bill. This bill does not manifest error. That Esther Green may have made a statement at some time with reference to the killing and had not included appellant would not subject him to be impeached upon this ground. Had he been called upon to testify in regard to all the facts in the case, or during his testimony his attention had been directed to whether there were more than one person present, and he had stated that there was not, and thereafter testified that two persons were present, it would have subjected him to impeachment. The bill does not even show that Esther Green was asked while testifying with reference to any statement he may have made that Elmore Charles may have heard. As the bill presents the matter the ruling of the court is not brought within any of the decisions or any rule of evidence that has been called to our attention that shows error in regard to the ruling. The bill fails to show that a predicate had been laid or any question asked of the witness Green as to these statements.

Another bill recites that the State's witness Hightower was asked "concerning a matter of the deceased's losing some seed cotton some ten months before the killing, the deceased having charged the defendant with the theft of the same, or rather it appeared that defendant had been implicated in some way." Appellant objected, the objection not being stated. It is stated the district attorney asked the question, but it does not give the answer, and none of the facts and circumstances are set forth in the bill that would show whether this was material or not. The bill is not sufficient to present the matter for consideration.

Another bill recites the State "sought to bring out by her witness Billie Norsworthy matters concerning some cotton that deceased claimed to have lost some ten months before the killing, and deceased claimed that defendant was implicated in getting the cotton." Objection was urged to this and the witness was permitted to testify to a conversation he had with defendant with reference to deceased having accused him of stealing the cotton. What that conversation was, otherwise than it was a conversation, is not stated, nor is the ground of objection stated. The bill recites that appellant objected to the introduction of the testimony, and the court overruled it. his may have entered into the motive for the killing. In order to have brought this question before the court for consideration, enough of the facts should have been stated to manifest what the defendant supposed to be error.

While the witness Jenkins was testifying for the State, it developed that he had been brought from the county jail to testify. Upon cross-examination this occurred: "What have they got you in jail for? A. For murder—supposed to be murder. Q. Murdering who? A Jim Wynne. Q. What was his age?" The State objected to any further examination. The court sustained the objection and would not permit the appellant to go farther into details. There seems to be no error in this matter, nor is it shown what was the purpose of seeking the age of Jim Wynne. That a witness may be impeached by showing that he was under a charge of murder is sustained by the authorities, but the authorities announce the rule that in such impeachment usually the details of the accusation will not be permitted. The same may be said of the following bill of exceptions as it is upon the same subject, and from the same witness.

There is a bill of exceptions reserved to the action of the court overruling the application for a continuance. There were two witnesses sought, the wife of appellant, and a witness named Charles who seems to have been in some way related to appellant. The wife ot apepllant was brought into court and testified It is unnecessary to consider the application further as to her. By the other witness, Charles, appellant expected to show a son of appellant on the evening of the killing had been sent by appellant to a certain house for shucks. This house seems to have been not far from where the killing oc-

curred. What effect this testimony would have had upon the case is not made to appear. The testimony shows that the boy was sent for the shucks. The court signs the bill with the qualification that the district attorney, after the conclusion of the testimony, offered to admit before the jury that witness would have testified as indicated, and that his testimony was true. We are of opinion that this does not relieve the error of the court in overruling the continuance if there was error. Such admission must be made at the time of overruling the continuance as a means of avoiding such continuance. The reason for this seems to be obvious. Had the admission of the truthfulness of the statement been made at the time and before the introduction of testimony, the State would have been precludd from contradicting it. The State will not be heard to admit the truthfulness of a statement and then introduce contradictory testimony of that admission. But the matter was testified to by witnesses before the jury. Taking the evidence from the statements in the motion for new trial, we are of opinion that whether this testimony was or was not before the jury would not be very material, but the jury had the matter before them any way for their consideration for whatever it was worth. Viewing the record in the light of the motion for a new trial, we are of opinion the court did not commit error in this matter.

It is contended as a final proposition that the evidence is not sufficient to support the conviction. The testimony of White, the accomplice is corroborated by the son of deceased who saw both White and appellant at the place of the shooting, and appellant was armed with the gun that fired the shot, and is further corroborated by the sheriff with reference to measurements of tracks. This would justify the jury in arriving at the conclusion that appellant did fire the shot from the woods which killed deceased. The testimony for the defendant shows both by positive evidence and circumstances that he was not present. In other words, he himself swore to an alibi, and other witnesses swore to facts which tend strongly to corroborate him. These matters were all before the jury. They heard the witnesses, noticed their manner of testifying, and had the whole matter in front of them as did the trial court. Under such circumstances this court would scarcely feel justified in setting aside the conviction. This was either an assassination, or it was nothing so far as the appellant is concerned. We would not feel justified in reversing the case for want of sufficient evidence under the stated circumstances.

Finding no reversible error in the judgment, or one that would justify this court in reversing the judgment, it is ordered to be affirmed.

*Affirmed.*